UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
IBRAHIM ANNAN,

                            Plaintiff,

     -against-

CITY OF NEW YORK POLICE
DEPARTMENT, et al.,

                          Defendants.
------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
12-CV-2702 (CBA) (CLP)

**AMON, Chief United States District Judge:**

Pro se plaintiff Ibrahim Annan has filed several submissions objecting to this Court's Memorandum and Order dated September 18, 2015 (the "September 18 Order"), denying his motions for partial summary judgment, judgment on the pleadings, and entry of default, and granting in part defendants' motion for partial summary judgment. (D.E. # 142–46.) Annan employs numerous labels in the captions of these submissions, but his specific and repeated references to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), together with the substance of these filings, lead the Court to interpret Annan's submissions as an application to this Court for reconsideration of the September 18 Order.

Although Annan invokes Rule 59(e), that rule governs the alteration or amendment of a judgment. See Fed. R. Civ. P. 59(e). Judgment has not yet entered in this case because the Court's September 18 Order did not adjudicate all of Annan's claims against all defendants. See Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of the parties does not end the action as to any of the claims or parties. . . ."). Accordingly, the Court construes Annan's submissions as a motion for reconsideration pursuant to Local Rule 6.3 rather than Rule 59(e). See McGee v. Dunn, 940 F.

1

Supp. 2d 93, 98 n.2 (S.D.N.Y. 2013) (construing pro se motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) as a Local Rule 6.3 motion because judgment had not yet entered).

In addition, as explained below, the Court interprets Annan's filings as seeking enforcement of a judgment pursuant to Federal Rule of Civil Procedure 70 and sanctions against defendants pursuant to Federal Rules of Civil Procedure 11(c) and 26(g)(3). For the reasons stated below, these applications are denied.

## BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case, as set forth in the September 18 Order and the September 9, 2014, Report and Recommendation of the Honorable Cheryl L. Pollak, United States Magistrate Judge. (D.E. # 131 ("R&R") at 2–11.) Briefly, this action arises from a series of interactions between Annan and the New York City Police Department ("NYPD") during the course of a missing-person investigation on four separate occasions: January 23–24, 2010; January 27, 2010; May 12, 2011; and January 21, 2012.

After discovery closed, Annan sought judgment on the pleadings, partial summary judgment, and entry of default against all defendants. (D.E. # 107, 121.) Defendants sought partial summary judgment, seeking dismissal of all claims except those against defendants Detectives James Rose and Bert Grant arising from the January 27 incident (the "January 27 claims"). (D.E. # 114.) Those motions were referred to Magistrate Judge Pollak, who recommended that Annan's motions be denied and that defendants' motion be granted in part and denied in part. Specifically, Magistrate Judge Pollak recommended that the Court permit Annan's claim that he was illegally frisked during the May 12 incident ("the frisk claim") to proceed due to disputed issues of fact.

The Court adopted these recommendations in their entirety and construed Annan's submissions as raising two additional claims not addressed by the R&R: (1) a Fourth Amendment claim for the alleged search and seizure of Annan's cellphone without a warrant on May 12, 2011; and (2) a First Amendment claim for interference with Annan's right to record police activity on the same date. Those claims, along with the frisk claim and the January 27 claims, are now proceeding to trial. The Court has scheduled a number of pretrial conferences and deadlines, and trial is set to begin on April 4, 2016. (D.E. dated Dec. 17, 2015.)

## DISCUSSION

### I. Motion for Reconsideration

Motions for reconsideration are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Moreover, "a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing Shrader, 70 F.3d at 257). These standards should be "narrowly construe[d] and strictly appl[ied]." DeMartino v. Kruger, 09-CV-119 (NGG) (LB), 2011 WL 2728290, at *1 (E.D.N.Y. July 11, 2011). Ultimately, "[t]he determination of whether to grant or deny a motion for reconsideration lies squarely within the discretion of the district court." Archer v. TNT USA, Inc., 12 F. Supp. 3d 373, 376 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).

Annan has filed nearly 300 pages of objections to the September 18 Order,[1] which include:

- A seven-page exegesis on the history, culture, and religion of the so-called "American Moorish Moors," a group with which Annan identifies, copied in full from the Wikipedia page entitled, "Template: Moorish American National," see https://en.wikipedia.org/wiki/Template:Moorish_American_National (last visited Dec. 22, 2015), (D.E. # 142 at 5–11);

- Ten pages of string citations to Title 28 of the U.S. Code, (D.E. # 142 at 12–16, 79–83);

- Thirty-six pages addressing the "right to travel," (D.E. # 142, 83–118), perhaps alluding to Annan's other pending action before this Court, see Annan v. State of N.Y. Dep't of Motor Vehicles et al., 15-CV-1058 (CBA) (CLP);

- A copy of an entire chapter from a report of the United States Commission on Civil Rights, see U.S. Commission on Civil Rights, Revisiting Who is Guarding the Guardians?: A Report on Police Practices and Civil Rights in America ch. 5 (2000), (D.E. # 143 at 2–17);

- A five-page chart excerpted from the Wikipedia page entitled, "List of amendments to the United States Constitution," see https://en.wikipedia.org/wiki/List_of_amendments_to_the_United_States_Constitution (last visited Dec. 22, 2015), (D.E. # 144 at 3–7);

- An entire law review, see Paul J. Heald and Michael L. Wells, Remedies for the Misappropriation of Intellectual Property by State and Municipal Governments Before and After Seminole Tribe: The Eleventh Amendment and Other Immunity Doctrines, 55 Wash. & Lee L. Rev. 849 (1998), (D.E. # 144 at 8–63); and

- Forty-six "Notice[s] of Motion," seeking $1,080,001,000 pursuant to Federal Rule of Civil Procedure 70 and $25,000,000 in sanctions pursuant to Federal Rules of Civil Procedure 11(c) and 26(g)(3), (D.E. # 142 at 40–66; D.E. # 143 at 20–31; D.E. # 144 at 64–68).

---

[1] Because these submissions are not consistently paginated, the Court refers throughout to the ECF page numbers.

The Court is mindful of its obligation to construe these materials liberally and has generously interpreted Annan's voluminous and often incomprehensible filings throughout the pendency of this action. Indeed, in the very Order Annan now challenges, the Court went so far as to interpret Annan's complaint as raising two new claims at the summary judgment stage, (see September 18 Order at 14–17), to ensure that his pleadings are interpreted to raise the strongest arguments they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), (pro se submissions should be "interpreted to raise the strongest arguments they suggest" (emphasis in original) (internal quotation marks and citation omitted)).

Even under the most liberal construction, however, the instant submissions fall far short of the necessary showing to merit reconsideration of this Court's September 18 Order. Annan has not demonstrated that this Court overlooked a controlling decision or material fact. See Shrader, 70 F.3d at 257. Instead, Annan seeks to relitigate issues already decided by this Court and to advance arguments not previously presented. See Davidson, 172 F. Supp. 2d at 461. The handful of such arguments that the Court was able to discern from Annan's submissions would not have altered the outcome articulated in the September 18 Order.

First, Annan argues that the Court wrongly dismissed the claims against former Commissioner Kelly by generally alleging that the NYPD engaged in various misconduct during his tenure and that he therefore could also have been responsible for the alleged wrongdoing that injured Annan. (D.E. # 142 at 2–4.) Even if the Court were inclined to consider this argument, Annan has not addressed the deficiencies identified by the R&R—namely, that he has not identified any personal involvement by former Commissioner Kelly in the incidents that gave rise to this action. (See R&R at 18–20.) To the contrary, the instant submissions all but confirm that Annan cannot demonstrate personal participation by former Commissioner Kelly, as Annan writes:

5

"If Commissioner Kelly did the above then why wouldn't he do it in this case[?]" (D.E. # 142 at 4.) Such conclusory and speculative assertions would not have raised an issue of material fact sufficient to preclude summary judgment on Annan's claim against former Commissioner Kelly.

Next, giving a liberal construction to his filings, Annan appears to challenge the Court's dismissal of his claims against the NYPD, the NYPD Missing Persons Unit, and the City of New York by: (1) arguing that because the defendant officers were NYPD employees, the NYPD, NYPD Missing Persons Unit, and/or the City of New York are liable under respondeat superior, (see D.E. # 142 at 24–25; D.E. # 145 at 24, 27, 29, 31, 33–34, 37–38, 40–41); (2) quoting numerous cases related to the immunity of various governmental actors and the legal standards governing liability under 42 U.S.C. § 1983, (see D.E. # 142 at 67–78); (3) pointing to a report by the U.S. Commission on Civil Rights concerning remedies available for victims of police misconduct, including recent legal developments, (see D.E. # 143 at 2–17); and (4) asserting conclusory allegations that the defendant NYPD officers were acting pursuant to NYPD policy and custom and that the NYPD failed to train and instruct those officers, (see, e.g., D.E. # 144 at 14–16).

These arguments would not have prevented dismissal of Annan's claims against the NYPD, the NYPD Missing Persons Unit, and the City of New York, because Annan has again failed to address the deficiencies identified by the R&R. The claims against the NYPD and NYPD Missing Persons Unit were dismissed because the NYPD and its subdivisions are non-suable entities; none of Annan's assertions changes the fact that, as a matter of New York City law, claims concerning the conduct of those entities must be asserted against the City of New York. (See R&R at 16.) Annan's claim against the City of New York was dismissed because the pleadings did not identify any policy, practice, or custom that allegedly caused Annan's injuries and therefore failed to state a claim for § 1983 liability under Monell v. Department of Social Services, 436 U.S. 658, 694–95

6

(1978). (Id. at 17.) Annan's newly asserted, conclusory allegations that the officer defendants were in fact acting pursuant to a policy or custom or were inadequately trained do not satisfy the dictates of Monell and would not have raised a triable issue as to the City of New York's liability. That the officers were employed by the City of New York is likewise irrelevant; a municipality cannot be held liable under § 1983 on the basis of respondeat superior. (See id. (citing Monell, 436 U.S. at 694–95).)

Annan has thus failed to demonstrate the exceptional circumstances necessary to warrant reconsideration of the Court's September 18 Order, and his application for reconsideration is denied. See Marrero Pichardo, 374 F.3d at 55.

## II. New Factual Allegations and Claims Concerning the January 27 Incident

Annan also raises new facts, arguments, and even claims in these submissions, which appear primarily to concern the January 27 incident. (See D.E. # 145 at 11–42.) Because defendants did not seek summary judgment on the January 27 claims, the Court has not yet had an opportunity to construe those causes of action. (See September 18 Order at 1, 17.) As those claims proceed to trial, the Court will interpret and precisely identify the claims arising from the January 27 incident in consultation with the parties. In so doing, the Court will consider any relevant allegations in Annan's submissions to the Court, including the instant filings.

## III. Motions for Enforcement of a Judgment and Sanctions

As discussed above, Annan's submissions include forty-six pages captioned "Notice of Motion," which purport to seek entry of judgment in the amount of $1,080,001,000 pursuant to Federal Rule of Civil Procedure 70 and $25,000,000 in sanctions pursuant to Federal Rules of Civil Procedure 11(c) and 26(g)(3), (D.E. # 142 at 40–66; D.E. # 143 at 20–31; D.E. # 144 at 64–68). These "notices" provide no explanation of why Annan believes he is entitled to such relief

and provide no justification whatsoever for his fanciful monetary demands. The Court liberally construes these "notices" as Annan's attempt to assert motions for relief under Federal Rules of Civil Procedure 70, 11(c), and 26(g)(3) respectively.

Federal Rule of Civil Procedure 70 provides for enforcement of a judgment requiring a party to perform a specific act. Although the Court denied defendants' summary judgment motion in part, Annan has not yet prevailed on his claims and no judgment has entered against defendants. Annan is therefore not entitled to the enforcement of any judgment.

Although Annan cites Federal Rules of Civil Procedure 11(c) and 26(g)(3), he identifies no grounds whatsoever for seeking sanctions. His application for sanctions is therefore denied.

## CONCLUSION

For the foregoing reasons, Annan's motions for reconsideration of the Court's September 18 Order, for enforcement of judgment pursuant to Federal Rule of Civil Procedure 70, and for sanctions pursuant to Federal Rules of Civil Procedure 11(C) and 26(g)(3) are denied. Annan is reminded that the parties are proceeding to trial. The Court has established a schedule for pretrial motions and proceedings with the goal of ensuring that Annan promptly receives his day in court. Annan is advised that further serial, voluminous filings will delay that process. If Annan wishes to make an application to the Court, he should do so once by concisely stating the relief he seeks and the grounds for the relief sought and only supplement that filing to the extent necessary to raise additional arguments or facts.

SO ORDERED.

Dated: December 29, 2015
Brooklyn, New York

s/Carol Bagley Amon

_____
Carol Bagley Amon
Chief United States District Judge